EDWARD HINES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22039.   Promulgated November 9, 1929.

*William S. Bennett, Esq.*, for the petitioner.
*P. M. Clark, Esq.*, and *C. C. Holmes, Esq.*, for the respondent.

**OPINION.**

TRAMMELL: The petitioner contends that the loss resulting in 1921 from the payment in that year of the amount of $467,362.23 under his agreement with Shank & Co. to indemnify or guarantee it against loss on the erection of the hospital was a net loss within the meaning of section 204 (a) of the Revenue Act of 1921, and that it more than offsets his income for 1922, thereby resulting in no tax liability for that year.

Section 204 (a) of the Revenue Act of 1921 provides in part as follows:

That as used in this section the term· "net loss" means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business) * * *.

The question before us is whether the loss sustained by the petitioner under the circumstances set out in our findings of fact constitutes a loss resulting from a trade or business regularly carried on by the petitioner. The petitioner urges that the loss resulted from his being president of the Edward Hines Lumber Co., and in which he was regularly engaged. We think there is no question but that the petitioner was regularly employed as president of the lumber company and have found as a fact from his own testimony that he had no other trade or business. The loss that we are here considering resulted directly from the petitioner having agreed to indemnify or guarantee Shank & Co. against loss in the erection of the hospital. The Government contemplated building a frame structure on the speedway site, but the petitioner was so desirous that a fireproof structure be erected that he agreed to make a contribution of $1,000,000 toward the erection thereof, and also guaranteed the contractor against loss. From the evidence in the

case it is not shown that the loss here involved resulted from the operation of any trade or business regularly carried on by the petitioner. While the petitioner acquired certain mortgage securities on the site where the hospital was erected because of his being president of the lumber company, the loss involved here is not connected with such securities but arises from the agreement guaranteeing Shank & Co. against loss.

We have heretofore had occasion to consider the meaning of the term "trade or business regularly carried on" as used in section 204 of the Revenue Act of 1921 and have held that it means a vocation and not occasional or isolated transactions. *J. J. Harrington*, 1 B. T. A. 11; *Fridolin Pabst*, 6 B. T. A. 843. Since the agreement guaranteeing Shank & Co. against loss appears to be the only one of its or a similar kind ever entered into by the petitioner, we think it comes within the class of occasional or isolated transactions. Inasmuch as the petitioner's loss was sustained in an occasional or isolated transaction, it did not constitute a net loss within the meaning of section 204 of the Revenue Act of 1921. The action of the respondent in refusing to apply the net loss for 1921 against the net income for 1922 is therefore approved.

At the hearing the respondent amended his answer as follows: " Respondent avers that in allowing a deduction of $17,347.15 from taxable income for the year 1922, he was in error and further avers that said amount should be restored to taxable income for said year." The respondent contends that the total amount expended by the petitioner under his agreement to guarantee Shank & Co. against loss constituted an additional contribution toward having the hospital built and, since there was no one to reimburse the petitioner for the payment of Shank & Co.'s loss, the petitioner's agreement really was an agreement to make as an additional gift whatever amount Shank & Co. lost in the completion of the hospital.

For the amount to be deductible as a loss it would have to be a loss incurred in trade or business or one incurred in a transaction entered into for profit though not connected with the trade or business. We think it is clear that the petitioner was not engaged in the indemnity or guaranty business. A careful consideration of the record fails to disclose anything to indicate that the petitioner expected to realize any profit from his guaranteeing Shank & Co. against loss. It could not be said to have been a transaction entered into for profit. From the record we think the petitioner was interested in having a fireproof hospital built and was willing to do what was necessary to have it done. This being true, it is

our opinion that the $17,347.15 paid by the petitioner in 1922 in accordance with his guaranty agreement constituted nothing more than an additional contribution toward having the hospital built. We think the respondent erred in allowing the amount as a deduction as representing a loss.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*